IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

NO. 24-2323
CRIMINAL

_____

UNITED STATES OF AMERICA,
Appellant,
v.
MUHAMMAD ARIF
Appellee

_____

Appeal from the United States District Court
for the Eastern District of Arkansas

The Honorable D.P. Marshall, Jr.
United States District Judge

_____

BRIEF OF APPELLANT

_____

JONATHAN D. ROSS
United States Attorney
Eastern District of Arkansas

KRISTIN BRYANT
JOHN D. WEBSTER
Assistant U.S. Attorneys
P. O. Box 1229
Little Rock, Arkansas 72203
501-340-2600

Attorneys for Appellant

# SUMMARY OF THE CASE

The Grand Jury for the Eastern District of Arkansas returned an Indictment charging Muhammad Arif with one count of sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1), (b)(2), and (c). At trial, Arif moved for a judgment of acquittal, arguing that the United States had failed to prove the "in or affecting interstate commerce" element of the offense. The district court took the motion under advisement, and the jury returned a guilty verdict. The district court subsequently granted Arif's motion for judgment of acquittal, set aside the jury's verdict, and entered a judgment of acquittal.

The United States appeals and asserts that the district court erred by granting the motion for judgment of acquittal.

The United States respectfully asserts that oral argument is not necessary in this case. If this Court elects to hear argument, the United States requests 10 minutes for argument.

Appellate Case: 24-2323    Page: 2    Date Filed: 08/19/2024 Entry ID: 5425919

# TABLE OF CONTENTS

SUMMARY OF THE CASE....................................................................i

TABLE OF CONTENTS.................................................................... ii

TABLE OF AUTHORITIES ............................................................ iii

JURISDICTIONAL STATEMENT .....................................................1

STATEMENT OF THE ISSUE..........................................................2

STATEMENT OF THE CASE ...........................................................3

SUMMARY OF THE ARGUMENT ...................................................8

ARGUMENT ..................................................................................10

CONCLUSION................................................................................18

CERTIFICATION OF COMPLIANCE ............................................19

CERTIFICATE OF SERVICE ..........................................................20

Appellate Case: 24-2323     Page: 3     Date Filed: 08/19/2024 Entry ID: 5425919

# TABLE OF AUTHORITIES

**CASES**                                                                                                     **PAGE(S)**

*Caminetti v. United States*, 242 U.S. 470 (1917)  ....................................................17

*Gonzales v. Raich*, 545 U.S. 1 (2005)  ............................................................11, 12

*Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186 (1974)  .....................................17

*Pierce County, Wash. v. Guillen*, 537 U.S. 129 (2003)  ....................... 12-13, 13, 17

*United States v. Ballinger*, 395 F.3d 1218 (11th Cir. 2005)  .......................2, 16, 17

*United States v. Baston*, 818 F.3d 651 (11th Cir. 2016)  ...................................14, 17

*United States v. Benton*, 890 F.3d 697 (8th Cir. 2018)  .........................................10

*United States v. Bishop*, 66 F. 3d 569 (8th Cir. 1995)  ....................................12, 15

*United States v. Boesen*, 491 F.3d 852 (8th Cir. 2007)  .........................................10

*United States v. Corum*, 362 F.3d 489 (2004)  ................................................ 13-14

*United States v. Helder*, 452 F.3d 751 (8th Cir. 2006)  .........................................10

*United States v. Koech*, 992 F.3d 686 (8th Cir. 2021)  ..........................2, 11, 12, 14

*United States v. Lemoine*, 104 F.4th 679 (8th Cir. 2024)  ......................................10

*United States v. Lopez*, 514 U.S. 549 (1995)  ........................................................2, 17

*United States v. McHenry*, 97 F.3d 125 (6th Cir. 1996)  ...................................12, 17

*United States v. McPherson*, 587 Fed. Appx. 556 (11th Cir. 2014)  .....................13

*United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008)  .............................................14

iii

*United States v. Mosby*, 60 F.3d 454 (8th Cir. 1995) ..............................................11

*United States v. Rodriguez-Cruz*, 681 Fed. Appx. 312 (5th Cir. 2017) ................14

*United States v. Roof*, 10 F.4th 314 (4th Cir. 2021) ................................................17

*United States v. Sanders*, 35 F.3d 61 (2d Cir. 1994) ..............................................11

*United States v. Thompson*, 285 F.3d 731 (8th Cir. 2002) ......................................10

*United States v. Trotter*, 478 F.3d 918 (8th Cir. 2007) ..........................................14

*United States v. Walls*, 784 F.3d 543 (9th Cir. 2015) ..............................................11

*United States v. Willoughby*, 742 F.3d 229 (6th Cir. 2014) ........................2, 14, 17

## **STATUTES**

18 U.S.C. § 1591(a) ..........................................................5, 8, 11, 13, 16

18 U.S.C. § 1591(a)(1) ........................................................................i, 5

18 U.S.C. § 1591(b)(2) ........................................................................i, 5

18 U.S.C. § 1591(c) ............................................................................i, 5

18 U.S.C. § 2119 ..................................................................................15

18 U.S.C. § 3231 ....................................................................................1

22 U.S.C. § 7101(b)(12) ......................................................................11

23 U.S.C. § 152 ....................................................................................13

28 U.S.C. § 1291 ....................................................................................1

iv

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 18 U.S.C. § 3231. The order granting Arif's motion for judgment of acquittal and the judgment of acquittal were entered on May 24, 2024. The United States filed a timely notice of appeal on June 21, 2024. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

1

# STATEMENT OF THE ISSUE

I. THE DISTRICT COURT ERRED BY GRANTING ARIF'S MOTION FOR JUDGMENT OF ACQUITTAL.

*United States v. Ballinger*, 395 F.3d 1218 (11th Cir. 2005)

*United States v. Koech*, 992 F.3d 686 (8th Cir. 2021)

*United States v. Lopez*, 514 U.S. 549 (1995)

*United States v. Willoughby*, 742 F.3d 229 (6th Cir. 2014)

Appellate Case: 24-2323    Page: 7    Date Filed: 08/19/2024 Entry ID: 5425919

**STATEMENT OF THE CASE**

In May through August of 2019, fifteen-year-old P.W. was living with her family in Judsonia, Arkansas. (Trial Tr., Vol. 2, p. 63). The family was not financially stable, and there were times when they went without food, water, and electricity. *Id.* at p. 64. P.W.'s father worked for Muhammad Arif. *Id.* at 65, 82. On May 28, 2019, Arif picked up P.W. and her father and took them to a job site that was approximately twenty minutes from their home. *Id.* at p. 66. Later, Arif sent P.W.'s father to another job site and gave P.W. a ride home. *Id.* Arif drove a 2016 Nissan Murano that was manufactured outside the state of Arkansas in Canton, Mississippi. *Id.* at pp. 82, 86.

The only people present in the vehicle were Arif and P.W. (Trial Tr, Vol. 2, p. 66). While Arif was driving P.W. home, he offered to give her $100 if she would "suck his dick." *Id.* at p. 67. This made P.W. uncomfortable, and she began recording their conversation on her iPhone. *Id.* On the recording, Arif can be heard pressuring P.W. to engage in sexual activity after she declines his advances. (Government's Exhibit 2.1; Trial Tr., Vol. 2, p. 68). He also asks several times that she keep their discussion secret. (Government's Exhibit 2.1). At one point, he tells her that engaging in the activity would "help [P.W.] learn something new" and "help [her] get what she wants." (Government's Exhibit 2.1, at 1:50 to 2:00). He also

3

suggests that he perform oral sex on her. *Id.* at 3:45. He asked P.W. how he could find a girl "to experience this thing." *Id.* at 4:37. When they arrived at P.W.'s home, Arif gave her $20 in cash, saying she could use it to buy her boyfriend a gift, and made her promise not to tell anyone about their conversation. *Id.* at pp. 69-70.

Approximately one month later, Arif drove P.W. home in his 2016 Nissan Murano a second time. (Trial Tr., Vol. 2, p. 71). P.W. again recorded their conversation during the trip on her iPhone. *Id.* During the trip, Arif again solicited P.W. to engage in sexual activity in exchange for money. (Government's Exhibit 2.2). He again requested that they keep the conversation a secret. *Id.* Arif acknowledged having given P.W. $20 during the previous trip and asked if she had told anyone about that conversation. *Id.* Those two instances were the only times that Arif and P.W. were alone together. *Id.* at p. 73. In August 2019, P.W. reported the incidents to police and showed them the recordings. *Id.*

On August 9, 2019, Detective Mary Rudesill with the Kensett Police Department was contacted by the Judsonia Police Department and asked to assist with transporting P.W. to the Safety Center in Searcy, Arkansas. (Trial Tr., Vol. 2, p. 80). The Safety Center is a location where law enforcement would take minor victims for forensic interviews. *Id.* After a forensic interview was conducted, P.W. showed Detective Rudesill the recordings she had made. *Id.* at p. 81. Detective

4

Rudesill interviewed Arif at the Judsonia Police Department in September 2019. *Id.* at p. 83. Arif was aware of the financial situation of P.W.'s family. *Id.* at pp. 84-85. Arif, who was 51 years old, acknowledged the ages of P.W. and her siblings. *Id.* at pp. 82, 85.

On February 4, 2020, the Grand Jury for the Eastern District of Arkansas returned an Indictment charging Arif with one count of sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1), (b)(2), and (c). (R. Doc. 1). At trial, P.W. testified regarding the conversations that she had recorded. The recordings were played for the jury. (Trial Tr., Vol. 2, p. 67). In both recordings, Arif discussed the fact that he typically went to Little Rock to get "massages," but that he would pay P.W. to give him a "massage" instead. (Government's Exhibits 2.1 and 2.2). It was undisputed that the Nissan Murano was manufactured in Mississippi, and that Arif drove P.W. from the business to her home 20 minutes away. (Tr. Vol. 2 pp. 66, 82, 86).

After the United States rested its case, Arif made a motion for judgment of acquittal in which he argued that the United States had failed to present evidence regarding the "in or affecting interstate commerce" requirement under 18 U.S.C. § 1591(a). (Trial Tr., Vol. 2, pp. 94-99). The United States opposed the motion, arguing that it did produce evidence that satisfied the "in or affecting interstate

5

commerce" requirement. *Id.* at pp. 99-106. The United States also submitted written argument to the district court. (R. Doc. 46). The district court took the motion under advisement and submitted the case to the jury for a verdict. *Id.* at p. 109.

Regarding the interstate commerce element, the district court instructed the jury as follows: "The elements instruction also uses the phrase 'interstate commerce.' The phrase 'interstate commerce' means commerce between any combination of states, territories, or possessions of the United States, including the District of Columbia. The term 'commerce' means, among other things, travel, trade, transportation, and communication. The government does not have to prove that Arif knew that he was affecting interstate commerce for you to find him guilty. But you must find that Arif's alleged conduct affected interstate commerce, though the effect may be minimal. Though you're not required to do so, you may consider that Arif used a vehicle in determining whether his alleged conduct affected interstate commerce." (Trial Tr., Vol. 2, p. 123). After deliberating, the jury returned a verdict of guilty. *Id.* at p. 152.

On May 24, 2024, the district court entered an order in which it granted Arif's motion for a judgment of acquittal. (Add. 1; R. Doc. 71). In its order, the district court found that the gift of the money was insufficient. *Id.* It found that "[t]he Murano was an essential part of Arif's solicitation." *Id.* The district court found that

6

Arif "used his vehicle as a means to isolate the minor in a confined space away from her father and others at the convenience store." *Id.* It also found that, while Arif's vehicle was an instrumentality of interstate commerce, there was no evidence that his use of the vehicle "had any effect, even a minor one, on interstate commerce." *Id.* The district court set the jury's verdict aside and ordered Arif released from custody. *Id.* The district court also entered a separate judgment of acquittal. (Add. 10; R. Doc. 72). The United States filed a timely notice of appeal from this order on June 21, 2024. (Add. 11; R. Doc. 73).

7

## SUMMARY OF THE ARGUMENT

There was evidence in the record that Arif's actions affected interstate commerce. Arif drove fifteen-year-old P.W. from one location to a second location twenty minutes away. During the trip, he repeatedly asked her to engage in sexual activity with him. He also gave her twenty dollars, telling her she could buy a gift for her boyfriend, and then told her to keep their conversation a secret. A vehicle is an instrumentality of interstate commerce. Roads are a channel of interstate commerce. The vehicle and the travel on the roadway were integral to the offense, as the act of taking P.W. home provided Arif with the opportunity to get her away from others and solicit her in private. As such, the vehicle and roadway formed the means for Arif to commit his offense.

In the context of prosecutions under 18 U.S.C. § 1591(a), this Court and others have held that use of cell phones and the Internet establishes the requisite effect on interstate commerce. This is ostensibly because by using these instrumentalities and channels of interstate commerce, the user accesses a nationwide network that is not free to use. Here, Arif's use of his vehicle on a roadway functioned in the same way. He tapped into a nationwide network of roads in order to commit his offense, and his use of his vehicle comes with costs, just as the use of phones or the internet does. In addition, in the course of committing the offense, Arif gave P.W. money, which

8

the jury could reasonably infer was used by her family for goods or services. Under the facts of this case, Arif's use of his vehicle and public roadways is indistinguishable from the uses of instrumentalities and channels of commerce that have been held to satisfy the requirement of an effect on interstate commerce.

The evidence also established that Arif's actions occurred in commerce. Under the Commerce Clause, Congress has the ability to regulate the instrumentalities and channels of interstate commerce. This includes the authority to keep the channels of interstate commerce free from evil uses. Arif used a vehicle and public roadways to solicit sex from a minor. His use of an instrumentality and channel of interstate commerce as the means to commit his offense places his conduct in commerce.

Because the evidence satisfied the jurisdictional requirements of § 1591, the district court erred by granting Arif's motion for judgment of acquittal, setting aside the jury's verdict, and entering a judgment of acquittal.

<u>**ARGUMENT**</u>

## I. THE DISTRICT COURT ERRED BY GRANTING ARIF'S MOTION FOR A JUDGMENT OF ACQUITTAL.

### A. Standard of Review

This Court reviews a district court's grant of a motion for judgment of acquittal de novo. *United States v. Lemoine*, 104 F.4th 679, 684 (8th Cir. 2024) (citing *United States v. Helder*, 452 F.3d 751, 753 (8th Cir. 2006)). It "review[s] the record in a light most favorable to the government, resolve[s] all evidentiary conflicts in the government's favor, and accept[s] all reasonable inferences that support the jury's verdict." *Id.* (citing *United States v. Benton*, 890 F.3d 697, 708 (8th Cir. 2018)). "A district court has 'very limited latitude' when considering motions for acquittal." *Id.* (citing *United States v. Thompson*, 285 F.3d 731, 733 (8th Cir. 2002)). It may not reweigh the evidence or assess the credibility of the witnesses. *See id.* "'This standard is very strict and a jury's verdict should not be overturned lightly.'" *Id.* (quoting *United States v. Boesen*, 491 F.3d 852, 855 (8th Cir. 2007) (internal quotation omitted)).

### B. The United States produced evidence that Arif's actions affected interstate commerce.

The Supreme Court of the United States has recognized that under the Commerce Clause Congress may regulate (1) the channels of interstate commerce,

10

(2) the instrumentalities of interstate commerce, and (3) activities that substantially affect interstate commerce. *See Gonzales v. Raich*, 545 U.S. 1, 16–17 (2005). 18 U.S.C. § 1591(a) states, "[w]hoever knowingly in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person knowing, or . . . in reckless disregard of the fact, . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)" of that section.

"The phrase 'in or affecting commerce' is a term of art that indicates a congressional intent to invoke the full extent of its commerce power." *United States v. Mosby*, 60 F.3d 454, 456 (8th Cir. 1995) (citing *United States v. Sanders,* 35 F.3d 61, 62 (2d Cir. 1994)). "'When Congress uses the language 'affecting interstate commerce,' as it did in § 1591(a)(1) of the [Trafficking Victims Protection Act of 2000], Congress generally intends to regulate to the outer limits of its authority under the Commerce Clause.'" *United States v. Koech*, 992 F.3d 686, 691 (8th Cir. 2021) (quoting *United States v. Walls*, 784 F.3d 543, 546 (9th Cir. 2015)). "In the Trafficking Victims Protection Act of 2000, which included 18 U.S.C. § 1591, Congress declared that human trafficking 'substantially affects interstate and foreign commerce.'" *Id*. (citing § 102, codified at 22 U.S.C. § 7101(b)(12)). "Congress may

11

'regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce.' If a federal criminal statute prohibits a class of activities that 'bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence.'" *Id.* (quoting *Raich*, 545 U.S. at 691). The United States produced evidence that Arif's actions had the requisite effect on interstate commerce.

Here, Arif drove fifteen-year-old P.W. from the worksite to her home that was twenty minutes away. During the drive, he repeatedly asked if she would engage in sexual activity with him in exchange for money. After she refused, he asked if she knew how he could get a girl to engage in the activity with him. He also gave her twenty dollars in cash, telling her that she could use it to buy a present for her boyfriend and then asking her not to tell anyone. Arif used a vehicle, which is a "quintessential" instrumentality of commerce. *See United States v. McHenry*, 97 F.3d 125, 126 (6th Cir. 1996). This Court has recognized that vehicles retain their character as instrumentalities of interstate commerce even when used intrastate. *See United States v. Bishop*, 66 F. 3d 569, 589 (8th Cir. 1995). He did so while traveling on roadways, which are channels of interstate commerce. *See Pierce County, Wash. v. Guillen*, 537 U.S. 129, 147 (2003).[1] In granting Arif's motion, the district court

---

[1] The record does not indicate which roads Arif used, although the record does show

Appellate Case: 24-2323     Page: 17     Date Filed: 08/19/2024 Entry ID: 5425919

noted that under § 1591(a), the mere use of an instrumentality is insufficient. However, Arif did more here than use an instrumentality of interstate commerce. He used an instrumentality as the means to commit the solicitation while traveling through a channel of interstate commerce and, in the course of the solicitation, he gave P.W. money. Although the district court appears to have considered these facts in isolation and found them wanting, it failed to recognize that it is the combination of these facts that demonstrates an effect on interstate commerce.

The facts of this case show that Arif's employment of an instrumentality while in a channel of interstate commerce is consistent with other instrumentalities and channels, the utilization of which have been found to have the requisite effect on interstate commerce, namely phones and the internet. "[T]elephones, even when used intrastate, are instrumentalities of interstate commerce." *United States v. Corum*, 362 F.3d 489, 493 (2004). The internet is both an instrumentality and a

---

that he traveled from one location to a different location that was approximately twenty minutes away. *Pierce County* involved a statute requiring states to "maintain an engineering survey of all public roads" that the Court stated was adopted "to state and local governments in reducing hazardous conditions in the Nation's channels of commerce." 537 U.S. at 147 (referring to 23 U.S.C. § 152); *see United States v. McPherson*, 587 Fed. Appx. 556, 563 (11th Cir. 2014) (stating that intrastate travel "necessarily involved the use of roads and highways, which are channels of interstate commerce"). Accordingly, roadways used to travel from one location to another twenty minutes away are channels of interstate commerce.

Appellate Case: 24-2323     Page: 18     Date Filed: 08/19/2024 Entry ID: 5425919

channel of interstate commerce. *See United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007). "[T]he use of phones, text messages, and internet advertising is evidence of the requisite effect on interstate commerce in a § 1591(a) prosecution." *Koech*, 992 F.3d at 693 (citing *United States v. Baston*, 818 F.3d 651, 664 (11th Cir. 2016); *United States v. Willoughby*, 742 F.3d 229, 240 (6th Cir. 2014) (noting that the defendant "used a Chinese-made cell phone in furtherance of his sex-trafficking activities") (overruled on other grounds)); *see United States v. Rodriguez-Cruz*, 681 Fed. Appx. 312, 313 (5th Cir. 2017) ("We have held that cell phones constitute facilities of interstate commerce and that their use, even if wholly intrastate, is sufficient to establish the "in or affecting interstate or foreign commerce" element for federal crimes."); *United States v. Mejia*, 545 F.3d 179, 203 (2d Cir. 2008) ("Use of an instrumentality of commerce, such as telephone lines, is also generally viewed as an activity that affects interstate commerce.").

Here, Arif's use of a vehicle on roadways operated just as the use of a cell phone or the internet. As the district court recognized, the use of the vehicle was integral to the crime. Arif used it to isolate P.W., and it was the only location where he could have solicited her under the guise of the otherwise innocent activity of giving her a ride home. Utilizing phones and the internet affect commerce because the defendant is employing an instrumentality of interstate commerce to access a

14

channel of interstate commerce in order to commit the offense. That is precisely what Arif did. The district court noted in its order that utilizing a phone or the internet is not free. Neither is the utilization of a vehicle on a roadway.

In considering a challenge to the federal carjacking statute, 18 U.S.C. § 2119, this Court indicated that intrastate roadway travel can be regulated as a "seamless web" in the same manner as airway or railway travel. *See Bishop*, 66 F.3d at 590. The same logic has been applied to the internet and phone networks. By extension, that logic applies in this case. Arif's vehicle tapped into a nationwide network of roadways used for interstate commerce in the same way a phone or computer taps into a nationwide communications network. Further, the use of the vehicle and the roadway were not merely incidental to the offense; they furnished the means for Arif to commit the offense.

And, in the course of committing the offense, Arif gave P.W. money. The fact that Arif stated during the first car ride that P.W. could use the money to "get what [she] wants" and mentioned her family's economic circumstances, combined with the additional fact that he solicited her again during the second car ride, supports the conclusion that the payment was intended keep open the possibility that P.W. would agree to engage in sexual conduct with Arif in exchange for payment. It also served as an attempt to buy her silence. The district court also recognized that the jury could

Appellate Case: 24-2323    Page: 20    Date Filed: 08/19/2024 Entry ID: 5425919

have made the reasonable inference that people in the dire financial situation in which P.W.'s family was mired likely used that money for goods or services. For purposes of the interstate commerce element of § 1591(a), this case is no different than one in which a defendant uses a phone or the internet to solicit sex from a minor in exchange for money. Accordingly, there was evidence in the record that Arif's actions affected interstate commerce, and the district court erred in granting Arif's motion for judgment of acquittal.

### C. The United States produced evidence that Arif's actions occurred in interstate commerce.

The district court's statement in its order that there was no argument before it that Arif's actions occurred in commerce is incorrect. In its written argument to the district court, R. Doc. 46, the United States argued that Arif's use of his vehicle was in commerce. Moreover, there was evidence before the jury sufficient to find that Arif's actions occurred in commerce.

By using the language "in . . . commerce" in § 1591(a) Congress invoked its power under the Commerce Clause to regulate the channels and instrumentalities of interstate commerce. *See United States v. Ballinger*, 395 F.3d 1218, 1233 (11th Cir. 2005). Congress's power to regulate the use of channels of interstate commerce includes the authority to "keep the channels of interstate commerce free from

immoral and injurious uses." *United States v. Lopez*, 514 U.S. 549, 558 (1995); *Caminetti v. United States*, 242 U.S. 470, 491 (1917). Vehicles are facilities of interstate commerce. *See McHenry*, 97 F.3d at 126. Roads are considered to be both channels, *Pierce County*, 537 U.S. at 147, and instrumentalities, *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 197 (1974), of interstate commerce. When a defendant utilizes both instrumentalities and channels of interstate commerce to commit his or her offense, the offense occurs in commerce. *See Ballinger*, 395 F.3d at 1235. This is true even if the use entirely intrastate. *See Baston*, 818 F.3d at 664 (citing *Ballinger*, 395 F.3d at 1226).

Arif's employment of both instrumentalities and channels of interstate commerce to commit his offense brings his actions within those that Congress can regulate and establishes the "in commerce" jurisdictional element of § 1591(a). *See Willoughby*, 742 F.3d at 240 ("We also note that Congress's authority to regulate interstate commerce includes the authority to regulate the instrumentalities thereof. Willoughby's cell phone is such an instrumentality, and he used it in furtherance of his sex trafficking." (internal citations omitted)); *see also United States v. Roof*, 10 F.4th 314, 385–87 (4th Cir. 2021) (holding that the defendant's use of the internet, a channel of interstate commerce was sufficient to establish the "in or affecting interstate commerce" element of the offense). Accordingly, there was evidence that

17

Arif's actions occurred in commerce, and the district court erred by granting his motion for judgment of acquittal.

## **CONCLUSION**

For the foregoing reasons and citations to authority, this Court should reverse the district court's order granting Arif's motion for judgment of acquittal and its judgment of acquittal. In addition, this Court should reinstate the jury's guilty verdict.

Respectfully submitted,

JONATHAN D. ROSS
United States Attorney


By: _/s/ John D. Webster_
    John D. Webster
    Bar No. 2002143
    Assistant United States Attorney
    P.O. Box 1229
    Little Rock, Arkansas 72203
    (501) 340-2600
    John.Webster@usdoj.gov

18

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,754 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in size 14 in Times New Roman.

3.      This document has been scanned for viruses and is virus-free, in accordance with United States Court of Appeals for the Eighth Circuit Local Rule 28A(h).

*/s/ John D. Webster*
John D. Webster
Assistant U.S. Attorney
Bar Number 2002143
P.O. Box 1229
Little Rock, Arkansas 72203
(501)340-2600
John.Webster@usdoj.gov

19

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this brief for review on August 19, 2024.

*/s/ John D. Webster*
John D. Webster
Assistant U.S. Attorney
Bar Number 2002143
P.O. Box 1229
Little Rock, Arkansas 72203
(501)340-2600
John.Webster@usdoj.gov

20