**No. 24-2323**

---

### IN THE UNITED STATES COURT OF
### APPEALS FOR THE EIGHTH CIRCUIT

**UNITED STATES OF AMERICA**                      **APPELLANT**

**VS.**

**MUHAMMAD ARIF**                             **APPELLEE**

---

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF ARKANSAS

**Honorable D.P. Marshall Jr.**
**United States District Judge**

---

### APPELLEE'S BRIEF

---

**LEMLEY LAW PARTNERS**

By:   Kevin M. Lemley
**206 Plaza Blvd., Suite F**
**Cabot, AR 72023**
**501-512-0098**
defense@lemley-law.com

## SUMMARY AND REQUEST FOR ORAL ARGUMENT

This case began as a state court prosecution of an Arkansas statute on November 12, 2019.  The Government took over the case and indicted Mr. Arif under 18 USC § 1591 on February 4, 2020.

The crux of this case was whether or not the Government could prove the effect on interstate commerce requirement of Section 1591.  Following a jury trial, Mr. Arif moved for acquittal in that the Government failed to establish the effect on interstate commerce requirement.

The district court submitted the case to the jury for a factual finding.  The jury returned a guilty verdict.  The Court took the motion for acquittal under advisement.  Afterward, Mr. Arif submitted a supplemental brief on the interstate commerce issue.

The district court granted the motion for acquittal, holding that the Government failed to prove an effect on interstate commerce.  The district court correctly applied the law and committed no error in granting the acquittal.

Mr. Arif requests oral argument and believes oral argument is necessary to assist the Court in its review.

i

# TABLE OF CONTENTS

SUMMARY AND REQUEST FOR

ORAL ARGUMENT ............................................................................... i

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES ................................................................. iiii

JURISDICTIONAL STATEMENT ......................................................... 1

STATEMENT OF THE ISSUE ............................................................... 2

STATEMENT OF THE CASE ................................................................ 3

SUMMARY OF THE ARGUMENT ....................................................... 6

STANDARD OF REVIEW ..................................................................... 8

ARGUMENT .......................................................................................... 9

CONCLUSION ......................................................................................36

CERTIFICATE OF COMPLIANCE ....................................................37

CERTIFICATE OF SERVICE .............................................................38

Appellate Case: 24-2323    Page: 3    Date Filed: 10/03/2024 Entry ID: 5442629

# TABLE OF AUTHORITIES

**CASES**                                                                          **Page**

*Babb v. U.S.*, 351 F.2d 863, 865 (8th Cir. 1965) ................................................ 21

*Cody v. Hillard*, 304 F.3d 767, 776 (8th Cir. 2002) ........................................ 35

*Davidson v. U.S.*, 61 F.2d 250 (8th Cir. 1932) ................................................ 19-20

*Jackson v. Ault*, 452 F.3d 734 (8th Cir. 2006) ................................................ 16

*U.S. v. Anderson*, 560 F.3d 275, 279 (5th Cir. 2009) ........................................ 30

*U.S. v. Ballinger*, 395 F.3d 1218 (11th Cir. 2005) ............................................ 28-30

*U.S. v. Bishop*, 66 F.3d 569 (3rd Cir. 1995) ................................................ 28

*U.S. v. Brady*, 425 F.2d 309 (8th Cir. 1970) ................................................ 21

*U.S. v. Briddle*, 430 F.2d 1335 (8th Cir. 1970) ............................................ 20-21

*U.S. v. Clements*, 2024 WL 131070 (D. N.M. Jan. 11, 2024) ........................... 30

*U.S. v. Collins*, 40 F.3d. 95 (5th Cir. 1994) ................................................ 18-19

*U.S. v. Corum*, 362 F.3d 489 (8th Cir. 2004) ............................................ 26-27

*U.S. v. Cox*, 942 F.2d 1282 (8th Cir. 1991) ................................................ 32

*U.S. v. Evans*, 272 F.3d 1069 (8th Cir. 2001) ................................................ 23

*U.S. v. Evans*, 476 F.3d 1176 (11th Cir. 2007)………………………………13, 29-30

*U.S. v. French*, 628 F.2d 1069 (8th Cir. 1980) ................................................ 32

*U.S. v. Frye*, 548 F.2d 765, 768 (8th Cir. 1977) ................................................ 33

Appellate Case: 24-2323     Page: 4     Date Filed: 10/03/2024 Entry ID: 5442629

*U.S. v. Grey*, 56 F.3d 1219 (10th Cir. 1995)……………………………………30-31, 34

*U.S. v. Hari*, 56 F.4th 1219 (8th Cir. 2023)…………………………………...9-10, 29

*U.S. v. Hirani*, 824 F.3d 741 (8th Cir. 2016) ................................................... 25

*U.S. v. James*, 534 F.3d 868 (8th Cir. 2008).................................................... 26

*U.S. v. Koech*, 992 F.3d 686 (8th Cir. 2021)…………………………………*passim*

*U.S. v. Mann*, 701 F.3d 274 (8th Cir. 2012)…………………………...22, 24-25, 34

*U.S. v. Michaels*, 726 F.2d 1307, 1310 (8th Cir. 1984)…………………...21-22, 24

*U.S. v. Monholland*, 607 F.2d 1311, 1316 (10th Cir. 1979) ............................ 22-23

*U.S. v. Moreira-Bravo*, 56 F.4th 568 (8th Cir. 2022) ....................................... 23

*U.S. v. Parker*, 364 F.3d 934 (8th Cir. 2004).................................................... 23

*U.S. v. Quigley*, 53 F.3d 909 (8th Cir. 1995)…………………2, 8, 16 – 19, 24, 26

*U.S. v. Sutherland*, 9 F. Supp. 204 (W.D. Mo. 1934)....................................... 31

*U.S. v. Thomas*, 159 F.3d 296 (7th Cir. 1998)................................................... 34

*U.S. v. Trotter*, 478 F.3d 918 (8th Cir. 2007) .................................................. 27-28

*U.S. v. Walton*, 633 F.Supp. 1353 (D. Minn. 1986) ......................................... 33

*U.S. v. Watson*, 525 F.3d 583, 585 (7th Cir. 2008)........................................... 33-34

*U.S. v. Williams*, 308 F.3d 833, 838 (8th Cir. 2002) ........................................ 16

*Van Horn v. Van Horn*, 2005 U.S. Dist. LEXIS 2498
(N.D. Iowa Feb. 4, 2005) ................................................................................. 32

Appellate Case: 24-2323     Page: 5     Date Filed: 10/03/2024 Entry ID: 5442629

## STATUTES

18 USC § 247 ................................................................................. 9, 29

18 USC § 408…………………………………………………………..19

18 USC § 844………………………………………………………….27

18 USC § 922 ................................................................................. 35-36

18 USC § 1030 ........................................................................... ….27

18 USC § 1591………………………………………………………*passim*

18 USC § 1951 ................................................................................. 17

18 USC § 2422 ................................................................................. 35

21 USC § 801………………………………………………………….36

22 USC § 7101…………………………………………………..10-13

Ark. Code Ann. § 5-18-103 ............................................................ 3

## OTHER AUTHORITIES

https://www.dhs.gov/blue-campaign/what-human-trafficking ......................... 12

https://www.unodc.org/unodc/en/human-Trafficking/Human-Trafficking.html
................................................................................................... 12

https://nhttac.acf.hhs.gov/soar/eguide/stop/what-is-trafficking ....................... 12

https://www.state.gov/what-is-trafficking-in-persons/ ..................................... 12

v

# JURISDICTIONAL STATEMENT

The district court had jurisdiction under 18 U.S.C. § 3231.  A final judgment of acquittal was entered on May 24, 2024.  A timely notice of appeal was filed on June 21, 2024.  This Court has jurisdiction under 28 U.S.C. § 1291.

Appellate Case: 24-2323    Page: 7    Date Filed: 10/03/2024 Entry ID: 5442629

## STATEMENT OF THE ISSUE

I THE DISTRICT COURT PROPERLY GRANTED ACQUITTAL BECAUSE THE GOVERNMENT FAILED TO MEET ITS BURDEN TO PROVE AN ACTUAL EFFECT ON INTERSTATE COMMERCE.

*U.S. v. Koech*, 992 F.3d 686 (8th Cir. 2021)

*U.S. v. Quigley*, 53 F.3d 909 (8th Cir. 1995)

Appellate Case: 24-2323 Page: 8 Date Filed: 10/03/2024 Entry ID: 5442629

## <u>STATEMENT OF THE CASE</u>

This case began on November 12, 2019, as a state court prosecution alleging trafficking of persons in violation of Ark. Code Ann. § 5-18-103. This statute has the same elements as 18 U.S.C. § 1591, with the exception that the Arkansas statute does not require an effect on interstate commerce.

The Government decided to intervene and take over the prosecution as a federal prosecution. Mr. Arif was indicted on February 4, 2020. The state case was then dismissed on February 10, 2020. Mr. Arif was charged with a single count of violation of Section 1591. A jury trial was held on March 26 – 27, 2024. The Government relied on two witnesses-- the alleged victim, P.W., and Officer Rudesill. P.W. testified that she moved to Arkansas in May of 2019 to live with her dad and stayed in Arkansas to go to school. (Trial Tr. Vol. 2, p. 63).

P.W. testified that Mr. Arif used his car to pick up P.W. and her dad from home to the job site. *Id.* at p. 66, lines 3 - 5. Then Mr. Arif took P.W. home. *Id.* This was an intrastate trip that lasted 20 minutes. *Id.* at lines 22 – 23. The second ride in the car was again an intrastate ride to take P.W. home. *Id.* at p. 72, line 12 – p. 73, line 7.

P.W. alleged that Mr. Arif offered to pay her one hundred dollars for oral sex. *Id.* at p. 67, lines 1 - 3. P.W. testified that she was never coerced, threatened with violence, or forced into any type of labor. On the contrary, she testified that Mr.

3

Arif said they would not do anything to make P.W. uncomfortable. *Id*. at p. 68, lines 11 – 16.

P.W. testified that she recorded the conversation and played the recording for her father and stepmother. *Id*. at p. 71, lines 2 – 9. None of them contacted the police or prevented P.W. from being around Mr. Arif. *Id*. Not only that, but they also allowed P.W. to again be alone with Mr. Arif to make another recording. *Id*. at lines 12 – 23. In fact, P.W. voluntarily put herself in that position to again be alone with Mr. Arif. *Id*. P.W. testified that Mr. Arif again offered money for oral sex. *Id*. at p. 72, lines 2 – 22. Again, she was never coerced, threatened with violence, or forced into any type of labor. *Id*.

P.W. testified that Mr. Arif gave her twenty dollars ($20.00) to buy her boyfriend a gift. Id. at p. 69, lines 13 - 25. There was no testimony provided as to what P.W. did with the twenty dollars or where the twenty dollars came from.

Officer Rudesill testified that the vehicle Mr. Arif used was a 2016 Nissan Murano. *Id*. at p. 82, line 8. The only other evidence the government offered was that the car was not made in Arkansas. *Id*. at p. 82, lines 5 – 10; p. 86, lines 5 – 6. Officer Rudesill researched the VIN number and determined the vehicle was manufactured in Canton, Mississippi. *Id*. at p. 86, line 6. Officer Rudesill failed to testify as to where and from whom Mr. Arif obtained the vehicle. Officer Rudesill

4

failed to testify if a purchase was involved at all, much less a purchase that affected interstate commerce.

Appellate Case: 24-2323    Page: 11    Date Filed: 10/03/2024 Entry ID: 5442629

## SUMMARY OF THE ARGUMENT

The government never should have taken this case from the state prosecutors. The government proved the wrong case against Mr. Arif. Section 1591, as previously interpreted by this Court, requires the government to prove an actual effect on interstate commerce, not just some use of an instrumentality of interstate commerce. The government failed to establish any actual effect on interstate commerce.

The government only established that Mr. Arif gave P.W. an intrastate ride in a 2016 Nissan Murano, where the alleged solicitation is claimed to have happened. The government's proof regarding the car firmly established that the use of the car in this case was wholly intrastate. The government failed to prove when or how Mr. Arif obtained the car. The government failed to prove that the car had retained its interstate status. The only proof that the government offered was that the car was manufactured in Mississippi in 2016.

The government proved that Mr. Arif gave P.W. twenty dollars ($20.00) to buy her boyfriend a birthday present. The government failed to prove what P.W. did with the money. The government also failed to prove the source of the money. The government simply did not prove the interstate nature of the money or how a nominal gift can have an actual effect on interstate commerce.

6

Even accepting everything in the government's case as true, the government only proved an intrastate use of a car and the gift of twenty dollars ($20.00). This is not enough to meet the government's burden of proving an actual effect on interstate commerce. The government never should have taken this case from the state prosecutors. The district court correctly granted the motion for acquittal.

Appellate Case: 24-2323   Page: 13   Date Filed: 10/03/2024 Entry ID: 5442629

## **STANDARD OF REVIEW**

In reviewing a judgment granting a motion for acquittal, this Court views the evidence in the light most favorable to the government and affirm if a reasonable jury viewing the evidence in this light must have a reasonable doubt about the existence of an essential element of the crime. *U.S. v. Quigley*, 53 F.3d 909 (8th Cir. 1995).

In *Quigley*, this Court affirmed acquittal because the government failed to prove an effect on interstate commerce even though a car was used in the commission of the crime. *Id*. at 910-11.

8

## ARGUMENT

The statute at issue is 18 USC § 1591. This Court has held this statute only regulates activities that substantially affect interstate commerce, not just the use of a channel or instrumentality: "The commerce element in § 1591(a)(1) is conduct in or affecting interstate commerce, not use of an instrumentality of interstate commerce." *Koech* at 693. In order to sustain a conviction, the government was required to prove an actual effect on interstate commerce. Id. at 692.

The government put on the wrong case below and argues the wrong case here on appeal. The government argues that it can meet its burden by showing only an intrastate use of an instrumentality of commerce. The government's argument flies in the face of Section 1591 and *Koech*.

## I. The Legislative History of Section 1591.

It is appropriate to first look at the legislative history of Section 1591. *See, e.g.*, *U.S. v. Hari*, 67 F.4th 903 (8th Cir. 2023). In *Hari*, this Court analyzed the interstate commerce effect of 18 USC § 247(a). This Court first turned to the legislative history of the law: "The House Judiciary Committee made its intent in this regard explicit:

> [T]he Committee intends that where in committing, planning, or preparing to commit the offense, the defendant either travels in interstate or foreign commerce, or uses the mail or any facility or instrumentality of interstate or foreign commerce, the statute will be

9

satisfied. H.R. Rep. No. 104-621, at [**7] 7 (1996). No additional showing of an interstate nexus is necessary when a statute regulates an instrumentality of interstate commerce."

*Id*. at 908.

The legislative history of Section 1591 is much different, as discussed in the next subsection below.

### A. The Legislative History of Section 1591 Only Finds an Effect on Interstate Commerce by Trafficking That Affects Labor Markets, not a Random Solicitation for Sex.

Section 1591 is part of the Trafficking in Victims Protection Act of 2000 ("TVPA"). The legislative findings for this act are set forth in 22 USC § 7101. Several items are important to note. First, there is never any mention whatsoever about intrastate activity, instrumentalities of interstate commerce, or channels of interstate commerce. *Id*. As such, Section 1591 cannot reach intrastate activity or the use of instrumentalities or channels without a direct effect on interstate commerce.

Second, the only legislative finding as to interstate commerce involves trafficking in persons for forced labor, not solicitation of sexual services. That provision states in its entirety:

> Trafficking in persons substantially affects interstate and foreign commerce. Trafficking for such purposes as involuntary servitude, peonage, and other forms of forced labor has an impact on the nationwide employment network and labor market. Within the context of slavery, servitude, and labor or services which are obtained or

10

maintained through coercive conduct that amounts to a condition of servitude, victims are subjected to a range of violations.

*See* 22 USC § 7101(12). Section 7101(12) clearly limits the effect on interstate commerce to situations where the victim is forced into some kind of labor that has some sort of impact on the labor market. *Id*. There is no legislative finding that there is any effect on interstate commerce from a solicitation for sexual purposes, much less an intrastate solicitation. *Id*. There is no other mention of interstate commerce anywhere in the TVPA.

Third, while the TVPA never directly defines the term "trafficking," there are two significant implications to be gleaned from its text. The first implication is that the term "trafficking" involves the movement of a person from one location to another, often an international movement. *See* 22 USC § 7101(1), (3), (5), and (8). The most illustrative is Subsection (5), which states: "Traffickers often transport victims from their home communities to unfamiliar destinations, including foreign countries away from family and friends, religious institutions, and other sources of protection and support, leaving the victims defenseless and vulnerable." The second implication is that there is some sort of threat of violence or forced labor rather than an offered exchange of money. *See* 22 USC § 7101 (2), (6)-(7), (9), and (11). Subsection (6) is a clear example: "Victims are often forced through physical violence to engage in sex acts or perform slavery-like labor. Such force includes rape

11

and other forms of sexual abuse, torture, starvation, imprisonment, threats, psychological abuse, and coercion."

These two implications are reflected in the definition of human trafficking by other governmental agencies. *See, e.g.* Department of Homeland Security, https://www.dhs.gov/blue-campaign/what-human-trafficking (Human trafficking involves the use of force, fraud, or coercion to obtain some type of labor or commercial sex act); United Nations, https://www.unodc.org/unodc/en/human-Trafficking/Human-Trafficking.html (Human Trafficking is the recruitment, transportation, transfer, harboring or receipt of people through force, fraud or deception, with the aim of exploiting them for profit.); U.S. Department of Health and Human Services, https://nhttac.acf.hhs.gov/soar/eguide/stop/what-is-trafficking (According to the Trafficking Victims Protection Act of 2000, or TVPA, human trafficking is a crime involving the exploitation of someone for the purpose of compelled labor or a commercial sex act through the use of force, fraud, or coercion.); U.S. Department of State, https://www.state.gov/what-is-trafficking-in-persons/ (Sex trafficking encompasses the range of activities involved when a trafficker uses force, fraud, or coercion to compel another person to engage in a commercial sex act or causes a child to engage in a commercial sex act.).

12

## B.     P.W. Was Never "Trafficked" as Defined by the TVPA.

The TVPA finds an effect on interstate commerce where victims are actually trafficked.  *Koech* is instructive, as that victim was actually "trafficked" under the TVPA.  The details of what that victim endured are horrific. She was plied with drugs and alcohol, forced into multiple sexual encounters with multiple men for money, repeatedly abused sexually and physically, advertised for sex on Facebook, and had nude pictures taken of her on a cell phone.   *Koech*, 992 F.3d at 689.  The victim in *Koech* is exactly the type of victim the TVPA was intended to protect.

Another example of actual trafficking is *U.S. v. Evans*, 476 F.3d 1176 (11th Cir. 2007).  In that case, the victim was actually forced to work as a prostitute for several months and forced to have sex.  *Id*. at 1177.

The government failed to prove that P.W. was ever "trafficked" within the meaning of 22 USC § 7101 or like the victims in *Koech* and *Evans*.  P.W. had moved to Arkansas in May of 2019 to live with her dad and stayed in Arkansas to go to school.  (Trial Tr. Vol. 2, p. 63, lines 6 – 25).  She was not brought to Arkansas for forced labor or sex.  *Id*.  She was never sold for sex, advertised for sex, forced into sex, or plied with drugs to engage in sex.  *Id*.   She was never trained to perform for customers.  *Id*.  She never purchased illegal drugs, never had a job in Arkansas, or did anything to be engaged in interstate commerce.  *Id*.  She was never threatened, coerced, or subject to violence.  *Id*.

P.W. testified that Mr. Arif offered to pay her one hundred dollars for oral sex. *Id*. at p. 67, lines 1 - 3. She was never coerced, threatened with violence, or forced into any type of labor. *Id*. On the contrary, the government's best evidence alleges that Mr. Arif said they would not do anything to make P.W. uncomfortable. *Id*. at p. 68, lines 11 – 16.

P.W. testified that she played the recording for her father and stepmother. *Id*. at p. 71, lines 2 – 9. None of them contacted the police or prevented P.W. from being around Mr. Arif. *Id*. Not only that, but they also allowed P.W. to again be alone with Mr. Arif to make another recording. *Id*. at lines 12 – 23. In fact, P.W. voluntarily put herself in that position to again be alone with Mr. Arif. *Id*. Whatever the motivation for this second encounter, P.W. clearly had no fear of Mr. Arif and was not being coerced or threatened with violence. *Id*. If P.W. was really being trafficked, no parent in their right mind would allow her to be around the supposed trafficker again. According to P.W., Mr. Arif again offered money for oral sex. *Id*. at p. 72, lines 2 – 22. Again, she was never coerced, threatened with violence, or forced into any type of labor. *Id*. Even accepting her testimony as true, she freely declined the invitation without any consequences. *Id*.

P.W. never testified that she had a job, attempted to get a job, or did anything to affect a labor market. Nor did she testify that she was prevented from entering a

labor market. Officer Rudesill's own testimony described Mr. Arif as asking P.W. if she was comfortable and felt safe. *Id*. at p. 87, lines 1 – 2.

## II.  The Government Asks This Court to Reverse *Koech*, but the Government Fails to Provide Convincing Evidence or Argument.

In *Koech*, this Court held that the use of "affecting" in 18 U.S.C. § 1591 requires "that there must be evidence of an actual rather than potential effect on interstate commerce." *Id*. The conviction was affirmed because, even though Koech only paid $60 for the sexual encounter, the victim took that money across state lines to purchase drugs in Wisconsin. *Id*. at 693. Additionally, the co-defendant advertised the minor's availability for sex on the internet, which also satisfied the interstate commerce nexus. *Id*. Most importantly, Koech used his Chinese-made cell phone to communicate with his codefendant about the sexual activities with the minor. *Id*. This Court held "the use of phones, text messages, and internet advertising is evidence of the requisite effect on interstate commerce in a Section 1591(a) prosecution." *Id*.

The government cannot provide the same proof in the instant case. To cure that deficiency, the government asks this Court to ignore the TVPA, rewrite Section 1591, and reverse *Koech* so that they only have to show some intrastate use of an instrumentality of commerce. This Court should decline the invitation. The long-standing rule of this Court is that one panel may not overrule an earlier decision by

15

another panel; only the court en banc has the power to take such action. *Jackson v. Ault*, 452 F.3d 734, 736 (8th Cir. 2006).

### III. The Government Failed to Prove That Mr. Arif's Actions Had Any Actual Effect on Interstate Commerce, as Required by Section 1591 and *Koech*.

This Court has provided helpful examples of what proves an actual effect on interstate commerce. That burden was satisfied in *Koech* by proving money for sex crossed state lines, drugs were purchased with the money for sex, and the victim was advertised for sex on the internet. *Koech* at 693.

Another illustrative case is *U.S. v. Williams*, 308 F.3d 833, 838 (8th Cir. 2002). The effect on interstate commerce caused by robbing a taxi driver was established by— the cab owner's insurance payment crossed state lines, a replacement part had to be ordered from out of state, and the driver lost opportunities to carry customers and packages traveling in interstate commerce. *Id*.

The government failed to follow these cases. The only evidence the government established regarding interstate commerce was: (1) Mr. Arif and P.W. were riding in a car; and (2) Mr. Arif gave P.W. twenty dollars. As the cases below will address, this is nowhere near enough to satisfy the government's burden of proving an actual effect on interstate commerce. The government's case suffers the same fatal flaws at the government's case in *Quigley*, 55 F.3d 909, where this Court affirmed the grant of for failing to prove the effect on interstate commerce.

16

## A. The Government Failed to Meet Its Burden to Prove the Car Was Used in Interstate Commerce.

This Court has directly held that the use of a car during the commission of a crime does not, by itself, affect interstate commerce. *Quigley*, 53 F.3d 909. In *Quigley*, two men were on their way to purchase liquor from a liquor store. *Id*. at 909. They began walking to the liquor store when the defendants spotted them. *Id*. at 910. The two victims got into the defendants' car. *Id*. The defendants then beat and robbed the two men. *Id*. This Court made short work of the government's argument that this somehow affected interstate commerce. This case involved 18 USC § 1951(a), about which the Court acknowledged: "This definition of commerce reaches as broadly as Congress's commerce power." *Id*. at 910. Regardless, the defendants' actions simply had no effect on interstate commerce even though the victims were on their way to purchase goods from a store. *Id*. at 911. The Court affirmed the judgment of acquittal for the defendants. *Id*. Moreover, the Court noted that the defendants did not escape punishment. They were convicted in state court and served jail time. *Id.*[1]

*Quigley* makes two other important points. First, this Court noted that actions normally have a lesser effect on interstate commerce when directed at individuals rather than businesses. *Id*. at 910. Second, this Court provides a 3-factor test to

---

[1] Mr. Arif was being prosecuted in White County Circuit Court, Case No. 73CR-19-788, before the government took over the prosecution.

Appellate Case: 24-2323    Page: 23    Date Filed: 10/03/2024 Entry ID: 5442629

evaluate when actions against individuals can violate the Hobbs Act: (1) the acts deplete the assets of an individual who is directly and customarily engaged in interstate commerce, (2) the number of individuals victimized or the sum at stake is so large that there will be some cumulative effect on interstate commerce, or (3) the acts cause or are likely to cause the individual victim to deplete the assets of an entity engaged in interstate commerce. *Id*. at 910-911.

In *Quigley*, this Court quoted extensively from *U.S. v. Collins*, 40 F.3d. 95 (5th Cir. 1994). There the defendant robbed an employee of a national computer company at gunpoint. *Id*. at 97-98. The defendant also stole cash, a cell phone, and a car from this person. *Id*. at 98. The government argued that, since the car had traveled in interstate commerce, the theft affected interstate commerce. *Id*. at 99. The government also argued interstate commerce was affected because the loss of the phone prevented the victim from conducting business. *Id*. The court rejected these arguments and held: "A finding of the requisite nexus herein would be in stark conflict with the principle that our federal government has limited and enumerated powers, with routine police power general being reserved to the states." *Id*. at 101. The court continued that there was nothing in the Hobbs Act to show that Congress intended to disrupt the federal-state balance. *Id*. The court concluded the robbery "falls into this general category of crimes which the states are best equipped to

18

handle and, in the absence of evidence showing some direct or substantial indirect effect on interstate commerce, the Hobbs Act does not apply." *Id*.

The government's argument here is the same argument that failed in *Quigley* and *Collins*. The facts in those cases were much stronger for the government than the facts in the instant case, and the government still failed to prove an effect on interstate commerce in those cases.

1. **The Government Failed to Meet Its Burden Under This Court's Long Line of Precedent to Determine if the Use of a Car is in Interstate Commerce.**

This Court has a long line of cases discussing how and when the use of a car is considered to affect interstate commerce. The government ignored these cases in its brief.

This line of cases began with *Davidson v. U.S.*, 61 F.2d 250 (8th Cir. 1932). The defendant was charged with violating 18 USC § 408, which prohibits receiving a vehicle which is moving or a part of interstate commerce, knowing the vehicle is stolen. *Id*. at 255. The Court explained that a car does not maintain its interstate commerce nature in perpetuity:

> It is, of course, an indispensable ingredient of the offense that the car at the time it was received, concealed, stored, bartered, sold, or disposed of, was "moving as, or was a part of, or constituted interstate commerce." If the car had lost the character of interstate commerce at the time it was received, etc., no offense against the laws of the United States has been proven. There is no testimony in the record that the transporters of this car intended to deliver to these defendants Brummell and Davidson. **The mere fact that the car had theretofore**

19

**been transported in interstate commerce is not sufficient**. The act does not purport to exercise jurisdiction over individuals who receive or sell stolen cars after such cars cease to move in or be a part of interstate commerce. Congress would have no constitutional authority to pass this act except for the commerce clause of the Constitution.

*Id*. (emphasis added). In reversing the convictions, this Court explained that the car had lost its interstate nature at the time the alleged crime occurred:

> The destination of the transportation of this car, as disclosed by the evidence, was Kansas City. That destination had been reached several days before Gillette brought the car to these two defendants. Now, then, in determining whether or not the evidence sustains the verdict of guilt as to the third court, it, of course, is not necessary to show that these two defendants knew that the car was moving in interstate commerce when it came into their possession; but it is necessary for the government to prove that at the time the car was received by these defendants, that such car was a part of interstate commerce. Receiving a stolen car that had lost its character as interstate commerce constitutes no crime against the laws of the United States. Wolf v. United States (C.C.A.) 36 F.(2d) 450. The government has totally failed to sustain this burden of proof, and there is no testimony or circumstances in the record that would support a finding that this car was in interstate commerce at the time it was received by these two defendants.

*Id*. The convictions were reversed. *Id*. at 256.

This Court has consistently maintained this approach. The character of a car in interstate commerce was analyzed in *U.S. v. Briddle*, 430 F.2d 1335 (8th Cir. 1970):

> It is recognized that the interstate movement of a car does not necessarily cease when the car stops and transportation of it into the other state ends. . . But its character of being a part of interstate commerce does not continue indefinitely after its transportation ends. After a period of time and depending upon what is done with the car, it may no longer be correct to treat it as moving in interstate commerce.

20

*Id*. at 1339. The Court continued to explain that, whether a car has maintained its interstate character "is a question of fact under the surrounding circumstances in each particular case." *Id*. In that case, the car maintained its interstate character because (1) the defendant purchased the car from New York; (2) the defendant immediately repainted the car to conceal it; and (3) the defendant sold the car to a dealer that was undoubtedly doing interstate commerce. *Id*. at 1339-40.

In *U.S. v. Brady*, 425 F.2d 309 (8th Cir. 1970), the car was held to maintain its interstate commerce nature because (1) the defendant bought a car with Colorado tags and immediately replaced them with Missouri tags, and (2) the court held that the defendant's purchase "was the final step of a continuous unlawful scheme of theft and interstate transportation." *Id*. at 3. *See also Babb v. U.S.*, 351 F.2d 863, 865 (8th Cir. 1965) ("The recent trip to Alabama to procure license plates, the switching of license plates immediately after coming into possession, the numerous license plates and paraphernalia found in the car, and the intended trip to California, are, we think, sufficient to support the jury's conclusion that the car was still a part of interstate commerce when Babb took possession.")

This Court more formally set forth a two-step approach to evaluate if the use of a car affected interstate commerce in *U.S. v. Michaels*, 726 F.2d

21

1307, 1310 (8th Cir. 1984).  Under this approach, the Court first examines the use of the vehicle.  The Court then determines if that use affected interstate commerce.  *Id*.  In that case, the evidence was uncontradicted that the victim used the car to conduct union business.  *Id*.  This affected interstate commerce because the local union "has substantial dealings with the International Union office in Washington, D.C." *Id*.

The *Michaels* test was further explained in *U.S. v. Mann*, 701 F.3d 274 (8th Cir. 2012).  That case involved 18 USC § 844(i), which prohibits the destruction or damage of property "used in interstate commerce" or "in any activity affecting interstate commerce."   The Court explained that a possible effect on interstate commerce is not enough:  "The statute does not extend to damaged or destroyed property that "might affect interstate commerce"; instead, Congress requires that the property itself was used in interstate commerce or an activity affecting interstate commerce." *Id*. at 301.   The conviction was affirmed because the victim used the car to conduct Arkansas State Medical Board business, and the Board was engaged in interstate commerce.  *Id*. at 302-303.

*Mann* is also important because it clarified that transportation of a person to and from work is not enough to satisfy an effect on interstate commerce.  *See* 701 F.3d at 302-303.  Adopting the analysis from *U.S. v. Monholland*, 607 F.2d 1311, 1316 (10th Cir. 1979), the Court concluded that "for there to be a connection

22

between the vehicle and the work, it must be shown that there exists a nexus between the two activities." *Id*. at 303.

The most recent case is *U.S. v. Moreira-Bravo*, 56 F.4th 568 (8th Cir. 2022). In that case, the defendant drove his car from Minnesota to Iowa. *Id*. at 569. He and the minor had sex in his car in Iowa. *Id*. at 570. They then both drove to Minnesota and had sex again. *Id*. The conviction was affirmed without the interstate commerce use being an issue. *Id*. at 579.

This Court has held that the purchase of a vehicle from a commercial used car dealer is sufficient, by itself, to have an effect on interstate commerce. *U.S. v. Evans*, 272 F.3d 1069, 1080 (8th Cir. 2001). This Court has also held that depositing or withdrawing funds from a bank engaged in interstate commerce will amount to an effect on interstate commerce. *U.S. v. Parker*, 364 F.3d 934, 951 (8th Cir. 2004). The *Evans* court also cited with approval that using the proceeds of interstate commerce to purchase a car will affect interstate commerce. 272 F.3d at 1080.

### 2. The Government Failed to Prove Any Specific Facts About Mr. Arif's Car to Prove an Effect on Interstate Commerce.

The government failed to present any evidence regarding Mr. Arif's typical use of the car. The government failed to present any evidence as to where or how Mr. Arif acquired the 2016 Nissan Murano. With the record before the Court, Mr. Arif may have been given the vehicle as a gift. Or he may have purchased it from a private party. He may have acquired the vehicle in 2016 and used it exclusively

23

intrastate since that time.  He may have never made an interstate use of the vehicle ever.  The government failed to present any proof that the acquisition of the vehicle involved a purchase that affected interstate commerce.  The government failed to show that the use of the vehicle had retained an interstate nature.  The government stopped when it showed the vehicle was manufactured outside of Arkansas.  The government simply failed to meet its burden of proof.

The government only presented evidence that Mr. Arif used his car to pick up P.W. and her dad from home to the job site.  (Trial Tr. Vol. 2, p. 66, lines 3 - 5). Then Mr. Arif took P.W. home.  *Id*.  This was an intrastate trip that lasted 20 minutes. *Id*. at lines 22 – 23.  The second ride in the car was again an intrastate ride to take P.W. home.  *Id*. at p. 72, line 12 – p. 73, line 7.  The only other evidence the government offered was that the car was not made in Arkansas.  *Id*. at p. 82, lines 5 – 10; p. 86, lines 5 – 6.

The government failed to meet its burden under *Quigley*, *Michaels* and *Mann*. As the cases above demonstrate, it is not enough to show that a car was used in a crime or that the car was once moved in interstate commerce, for the transported car does not retain its interstate nature forever.  Instead, the government had to prove specific facts that the car was being used in interstate commerce at the time of the crime so as to create an actual effect on interstate commerce.  Transportation of a person to and from work is not enough to satisfy an effect on interstate commerce.

24

*Mann* 701 F.3d at 302-303. Moreover, the government failed to present any evidence that Mr. Arif was using the car for interstate commerce at the time of the alleged crime. The government even failed to establish when or from whom Mr. Arif acquired the vehicle.

**B.    The Government's Argument Regarding Roadways Must Fail.**

For the first time on appeal, the government now argues that any use of any roadway will satisfy its burden under Section 1591. The government never raised this argument below. There are several problems with the government's new argument.

First, this argument requires additional factual development and should be rejected on that ground alone. This Court ordinarily will not consider an argument raised for the first time on appeal. *U.S. v. Hirani*, 824 F.3d 741, 751 (8th Cir. 2016). The new argument can should only be addressed if it is purely legal, requires no additional factual development, and the new argument is encompassed in a more general argument previously raised. *Id*. Since the government never raised that argument below, they failed to establish the necessary factual record. The only factual record is P.W.'s testimony that there was a ride that lasted about 20 minutes. (Trial Tr. Vol. 2, p. 66, lines 9 – 25). There is no evidence in the record whatsoever as to what road was used or even if any road was used at all. Under the deficient

25

record before the Court, the entire ride could have taken place across a field or an intrastate dirt road with no connection whatsoever to interstate commerce.

The government also failed to make a factual record that any use of a road anywhere has some impact on interstate commerce. No witness established that point at trial. The government is not allowed to now make that assumption on appeal.

Second, this Court has held that allegations of error not accompanied by convincing argument and citation to authority need not be addressed on appeal and are regularly declined review. *U.S. v. James*, 534 F.3d 868, 875 (8th Cir. 2008). The government offers no citation whatsoever to support its argument. Moreover, the government's argument directly contradicts the long-standing Eighth Circuit precedent discussed in this section, *supra*. That authority clearly establishes that the interstate nature of a car must be analyzed by the specific use of the car. Under the government's new argument, a car always maintains its interstate nature by using any road anywhere. In fact, the *Quigley* court specifically noted that the defendants were driving a car on a road. 53 F.3d 909 at 910. The fact they were driving on a road did not create an effect on interstate commerce. *Id*. at 911.

Third, the government is mistakenly relying on cases interpreting statutes that do not require an actual effect on interstate commerce. The government relies on *U.S. v. Corum*, 362 F.3d 489 (8th Cir. 2004). It is true that this Court held "It is

well-established that telephones, even when used intrastate, are instrumentalities of interstate commerce." Id. at 493. However, the statute involved in that case was 18 USC 844(e). Id. That statute allows the government to prove its case if there is an effect on interstate commerce **or** if any instrument of interstate commerce is used at all. *See* 18 USC 844(e). In fact, the *Corum* opinion specifically points this out: "The plain language of 18 U.S.C. § 844(e) does not require proof of interstate commerce. Section 844(e) requires no additional proof of an interstate nexus beyond a showing that Corum used an "instrument of interstate commerce," namely a telephone, to make his threat." *Corum*, 362 F.3d at 493. Because the way that statute was written, the conviction was affirmed even without an actual effect on interstate commerce. *Id*.

The government then relies on *U.S. v. Trotter*, 478 F.3d 918 (8th Cir. 2007). The statute there was 18 USC 1030(a)(5)(A)(i), which prohibits certain actions against a "protected computer." The term "protected computer" is defined as a computer that is used in **or** affecting interstate commerce. *See* 18 USC § 1030(e)(2)(B) (emphasis added). The computers at issue were connected to the internet, and this Court held that satisfied the used in interstate commerce component. 478 F.3d at 921. For the law at issue in that case, this Court held that Congress could regulate a computer once it was used in interstate commerce. *Id*. at

27

922.  Thus, the *Trotter* case in no way dealt with an actual effect on interstate commerce.

Fourth, the government inexplicably relies upon *U.S. v. Bishop*, 66 F.3d 569 (3rd Cir. 1995).  This is a Third Circuit Case that the government misstates as an Eighth Circuit case.  That glaring fact aside, *Bishop* does not help the government.  *Bishop* just holds the basic principle that cars are instrumentalities of interstate commerce, and Congress may regulate their use, even if intrastate.  *Id*. at 590.  The statute under which the government chose to prosecute Mr. Arif does not regulate instrumentalities of commerce; it requires an actual effect on interstate commerce.  *See Koech*.

Fifth, the government places mistaken reliance upon *U.S. v. Ballinger*, 395 F.3d 1218 (11th Cir. 2005).   In that case, the effect on commerce was readily apparent.  Ballinger drove from Indiana to Georgia, passing through Kentucky and Tennessee, using interstate highways, purchasing goods in multiple states, and staying in multiple hotels.  Id. at 1223.  He set fire to multiple churches in Indiana, Kentucky, Tennessee, and Georgia.  Id.  During his arson spree, Ballinger crossed interstate borders 6 times and burned 11 churches in 4 states.  *Id*. at 1224.  Ballinger does not stand for the proposition that an intrastate use of an instrumentality of commerce will create an actual effect on interstate commerce.

28

*Ballinger* did not even address Section 1591. The law at issue in *Ballinger* was 18 USC § 247(a), which was the statute analyzed by this Court in *Hari*, 67 F.4th 903. *See* Section I, *supra*. This Court explained the obvious effect on interstate commerce by the defendants in that case:

> The conspirators traveled from Illinois to Indiana to purchase explosives, then drove on interstate highways to Minnesota for the purpose of bombing a prominent mosque that is the religious, cultural, and economic center in the lives of its parishioners, many of whom are immigrants from Somalia who were invited by the federal government to settle in the United States when they fled their war-torn native country. The international pursuit of religious freedom has economic roots.

*Id*. at 908.

After *Ballinger*, the Eleventh Circuit did address Section 1591 in *U.S. v. Evans*, 476 F.3d 1176 (11th Cir. 2007). The *Evans* case does not save the government's case because it is easily distinguishable on the facts. In that case, the defendant ran a prostitution ring where he forced the victim to have sex with other men. *Id*. at 1177. It was not a private solicitation for personal sex. *Id*. The defendant used a cell phone to engage the victim in sexual activities and gave that number to her customers. *Id*. The defendant supplied the victim with condoms that originated overseas. *Id*. The defendant also booked hotel rooms where the victim would have sex. *Id*. The court then turned to the legislative history of Section 1591 and determined an actual effect on interstate commerce was required. *Id*. at 1179-80. The court found a substantial effect on interstate commerce by the defendant's

29

operation of a prostitution ring, use of condoms in interstate commerce, and use of hotels that operated in interstate commerce. *Id*. at 1179-80. The *Evans* opinion is consistent with *Koech* and other courts that have interpreted Section 1591. *E.g.*, *U.S. v. Anderson*, 560 F.3d 275, 279 (5th Cir. 2009) (finding error in jury instructions that could be read to "relieve[] the prosecution of the burden of proving that interstate commerce was actually affected by the sex trafficking in this case").

Neither *Ballinger* nor *Evans* case supports the government's argument that an isolated intrastate use of an instrumentality can create an effect on interstate commerce to satisfy Section 1591.

### C. The Use of Currency Alone Cannot Establish an Effect on Interstate Commerce.

At the district court, the government relied upon *U.S. v. Clements*, 2024 WL 131070 (D. N.M. Jan. 11, 2024) for the proposition that the use of money alone can create an effect on interstate commerce.

As Mr. Arif pointed out below, that proposition had already been squarely rejected by the Tenth Circuit (the controlling circuit over the *Clements* court) in *U.S. v. Grey*, 56 F.3d 1219 (10th Cir. 1995). There the court said:

> Here the government proved nothing, nothing more than that $200 in cash currency was used. The government would have us hypothesize the source and ultimate destination of the $200 in Federal Reserve Notes without one iota of evidence related to its origin or proof of what subsequently took place with the funds, as did the government prosecutors in *Kelley, Gallo, Peay,* and *Eaves.* It asks us to take a gigantic leap in federal criminal law jurisprudence without offering a

30

single precedent in justification or, in lieu thereof, a reasoned discourse to support its position.

*Id*. at 1225.  The court went on to say:

> In essence, the government asks this court to rewrite the money laundering statute. It asks us to vitiate the language "a transaction which in any way or degree affects interstate or foreign commerce," and substitute instead the notion that "federal jurisdiction under the money laundering statute is vested in any transaction involving Federal Reserve Notes." This we refuse to do. We lack both the inclination and the power. Moreover, we doubt that even Congress could do this without offending the constitution. We therefore hold that the government failed to prove the requisite federal jurisdiction in the prosecution of Huey Grey under 18 U.S.C. § 1956. We reverse his conviction and vacate his sentence for money laundering.

*Id*. at 1226.

While this Court apparently has not directly decided this issue, research indicates that all available authorities follow this principle that currency alone cannot establish an effect on interstate commerce.

The closest case on point is *U.S. v. Sutherland*, 9 F. Supp. 204 (W.D. Mo. 1934).  This case involved the sale of lumber for cash.  *Id*. at 205.  The government argued this was interstate commerce.  The court first stated, "The contention seems to me so extravagant as scarcely to deserve serious consideration."  *Id*. at 207. The court went on to say: "Under such a theory, almost every sale made by any merchant in every city, town, and hamlet in the United States is a transaction in interstate commerce. The theory is supported neither by reason nor precedent."  *Id*.

31

Another instructive case is *U.S. v. French*, 628 F.2d 1069 (8th Cir. 1980). That case involved a city official who demanded small cash payments from bondsmen on forfeited bonds. *Id*. at 1071. While the cash payments were small, it prevented the city from collecting the forfeited bonds. *Id*. This Court found that defendant's actions affected interstate commerce because it put bondsmen who were willing to engage in corruption at a competitive advantage. *Id*. at 1078. By doing so, the Court found that the defendant "affected the quality of interstate commerce if not its quantity." *Id*.

The issue was indirectly addressed in *U.S. v. Cox*, 942 F.2d 1282 (8th Cir. 1991). There the defendant robbed the victim of cocaine, a revolver, and cash. *Id*. at 1284. The defendant challenged the interstate nexus. This Court found interstate commerce was sufficiently established for the gun and the cocaine. *Id*. at 1286. There was no discussion of cash and interstate commerce, which further supports the conclusion that this Court does not accept cash alone as establishing interstate commerce. *Id*.

Cash dividends were at issue in *Van Horn v. Van Horn*, 2005 U.S. Dist. LEXIS 2498 (N.D. Iowa Feb. 4, 2005). Payment of this dividend "necessarily involved interstate commerce as the director/shareholders are residents of different states." *Id*. at * 35.

32

Cash is very different from credit card payments. This distinction was highlighted in *U.S. v. Walton*, 633 F.Supp. 1353 (D. Minn. 1986). The defendant ran a prostitution ring and allowed his customers to use credit cards to pay. *Id*. at 1355. The payments were then processed in clearinghouses in other states. *Id*. at 1356. It was the clearinghouse activity that made this fall within interstate commerce, even though the prostitutes and customers were in Minnesota. *Id*. More importantly for the case at bar, the court went on to explain how this was different from cash payments:

> It also distinguishes these transactions from cash transactions. The defendants used a facility in commerce by accepting charges that required the defendants to participate in an interstate collection process. By obtaining the privilege to accept cards through local banks, the defendant submitted his business enterprise to, and reaped the benefits of a system dependent on interstate commerce and the mail. Thus, every time a credit card slip was deposited in his local account and was mailed to a clearinghouse, a facility in interstate commerce was used.

*Id*.; *see also U.S. v. Frye*, 548 F.2d 765, 768 (8th Cir. 1977) (cashing a check involves transportation in interstate commerce). The *Walton* opinion is clear that, had the defendant only accepted cash payments, his actions would not have affected interstate commerce. It was only the use of out-of-state clearinghouses for credit card payments that brought in interstate commerce.

The Seventh Circuit rejected the government's argument in *U.S. v. Watson*, 525 F.3d 583, 585 (7th Cir. 2008). The government argued it had jurisdiction since the cash stolen had traveled in interstate commerce. *Id*. at 590. The court held this

33

was "legally insufficient, for if cash could serve as the jurisdictional hook, any robbery would be a federal crime." *Id.* Another instructive Seventh Circuit case is *U.S. v. Thomas*, 159 F.3d 296 (7th Cir. 1998). That case upheld a Hobbs Act conviction for robbery of $675.00. The reasoning was that the victim planned to use that money to purchase crack cocaine, which would have originated in South America. *Id.* at 297-98. Thus, the robbery of cash directly obstructed interstate commerce by preventing the transaction. *Id.*

Finally, the Tenth Circuit rejected the government's argument in *Grey*, 56 F.3d at 1225-26. This Court in *Mann* adopted the Tenth Circuit's approach to evaluate if the use of a car was in interstate commerce. It stands to reason this Court should follow the same approach regarding cash.

The government only offered evidence that Mr. Arif gave P.W. $20.00, and she put it in her pocket. *Id.* at p. 69, lines 24-25; p. 70, lines 18 – 22. Her intent was to buy her boyfriend Scott a present, but no evidence was presented of what she intended to buy or from whom she intended to buy it. *Id.* at p. 69, lines 13 – 22. She never crossed state lines with it or purchased illegal drugs with it. *Id.* In fact, the evidence about the money stops once she places it in her pocket. *Id.* Then P.W. testified that Mr. Arif asked her not to tell anyone about the $20.00. *Id.* at p. 70, lines 1 – 3. None of the cases cited above support the notion that asking someone to be quiet somehow affects interstate commerce.

Appellate Case: 24-2323   Page: 40   Date Filed: 10/03/2024 Entry ID: 5442629

**VI. The Government's Interpretation of Section 159 Would Render the Jurisdictional Hook Meaningless, Which Violates Basic Statutory Interpretation.**

Statutes are to be interpreted as a whole, and courts should not interpret one provision in a manner that renders other sections of the same statute inconsistent, meaningless, or superfluous. *Cody v. Hillard*, 304 F.3d 767, 776 (8th Cir. 2002).

Section 1591's jurisdictional hook, as interpreted by *Koech*, requires an actual effect on interstate commerce. The government now asks this Court to re-interpret the statute so that the jurisdictional hook has no meaning. The government wants to meet its burden by proving any intrastate use of any instrumentality of commerce.

Not only does the government's argument violate basic statutory interpretation, but there are also numerous examples where, if Congress intended to criminalize any use of an instrumentality, it would do so. *See, e.g.*, 18 USC § 2422(b) (reaching any activity "using the mail or any facility or means of interstate commerce" to entice or coerce a minor into sexual activity); 18 USC 844(e) (allowing the government to prove its case if there is an effect on interstate commerce **or** if any instrument of interstate commerce is used at all).

And if Congress wanted to extend jurisdiction to an article that had ever been in commerce at any time, it would clearly do so. E.g., 18 USC § 922(g)(1) ("[i]t

35

shall be unlawful for any person - to . . . possess in or affecting commerce, any firearm . . . which has been shipped or transported in interstate . . . commerce.")

Similarly, if Congress wanted to specifically target intrastate activity, it will clearly do so. *E.g.*, 21 USC § 801(5) and (6) (specifically stating that intrastate drug activity directly affects interstate commerce).

Congress simply did not write Section 1591 the way the government wants that statute to be interpreted. The government had no basis to prove a federal crime against Mr. Arif and should never have interfered with the state prosecution.

## <u>CONCLUSION</u>

For the above stated reasons, the government failed to meet its burden that Mr. Arif's actions affected interstate commerce. The government at best proved a wholly intrastate solicitation, which is simply not a federal crime. The motion for acquittal was properly granted, and the judgment below should be affirmed.

Respectfully submitted,

/s/ Kevin Lemley
Lemley Law Partners
Kevin M. Lemley (2005034)
206 Plaza Blvd, Suite F
Cabot, AR 72023
defense@lemley-law.com
(501) 512-0098 (voicemail only)

36

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), excluding the parts of the document exempted by Fed. R. App. P. 32(f), and this document contains a total of 7,973 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in size 14 in Times New Roman.

3. This document has been scanned for viruses and is virus-free, in accordance with United States Court of Appeals for the Eighth Circuit Local Rule 28A(h).

/s/ Kevin Lemley
Lemley Law Partners
Kevin M. Lemley (2005034)
206 Plaza Blvd, Suite F
Cabot, AR 72023
defense@lemley-law.com
(501) 512-0098 (voicemail only)

Appellate Case: 24-2323     Page: 43     Date Filed: 10/03/2024 Entry ID: 5442629

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this brief for review on October __, 2024.

/s/ Kevin Lemley
Kevin Lemley